UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

 MILWAUKEE DIVISION

ANDREW RICHARDSON,

Plaintiff,

v.

CITY OF MILWAUKEE; MATTHEW TORBENSON, in his individual capacity; JOHN CHISHOLM, in his individual and supervisory capacity; BENJAMIN SMITH, in his individual capacity; ROBIN ORTIZ, in his individual capacity; and ADAM RILEY, in his individual capacity,

Defendants.

Case No.:

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS (42 U.S.C. § 1983)

JURY DEMAND

Plaintiff Andrew Richardson brings this action against the City of Milwaukee and individual state and municipal actors for the deprivation of rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution. In support, Plaintiff alleges as follows:

I. JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983 for the deprivation of rights secured by the Fourteenth Amendment. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2026 APR -8  A 11: 43

CLERK OF COURT

26-C -595

2. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims, including the unconstitutional directive to purge federal safety records, occurred in this district.

## II. PARTIES

3. Plaintiff ANDREW RICHARDSON is a citizen of the United States, born on April 9, 2006. At all times relevant to the constitutional violations, he was a minor child. This action is timely filed pursuant to the minority tolling provisions of Wis. Stat. § 893.16, as it is commenced within two years of Andrew Richardson reaching the age of majority.

4. Defendant CITY OF MILWAUKEE is a municipal corporation organized under the laws of the State of Wisconsin, responsible for the policies, practices, and customs of its police department and for the supervision of its employees, including Defendants Smith, Ortiz, and Riley.

5. Defendant MATTHEW TORBENSON is sued in his individual capacity. At all relevant times, he was an Assistant and later Deputy District Attorney for Milwaukee County. Acting under color of state law, he was a nationally recognized expert in international child abduction who, in a conscience-shocking departure from his own established protocols, directed the removal of Andrew Richardson from the National Crime Information Center (NCIC) database.

6. Defendant JOHN CHISHOLM is sued in his individual and supervisory capacity. At all relevant times, he was the District Attorney for Milwaukee County and a final policymaker responsible for the training, supervision, and conduct of his subordinates, including Defendant Torbenson.

7. Defendant BENJAMIN SMITH is sued in his individual capacity. At all relevant times, he was a sworn police officer with the Milwaukee Police Department, an agency of the City of Milwaukee, who executed the teletype that purged Andrew Richardson from the NCIC database under color of state law.

8. Defendant ROBIN ORTIZ is sued in his individual capacity. At all relevant times, he was a sworn police officer with the Milwaukee Police Department assigned to the investigation and had direct knowledge of the international nature of the case and the abductor's status as a fugitive.

9. Defendant ADAM RILEY is sued in his individual capacity. At all relevant times, he was a sworn police officer with the Milwaukee Police Department involved in the initial investigation and was aware of the state court custody orders.

## III. STATEMENT OF FACTS

### A. The Abduction and the State's Actual Notice of Extreme Danger

10. In August 2007, Plaintiff Andrew Richardson, then a one-year-old child, was abducted from Milwaukee, Wisconsin, to Mexico by his mother, Mariana Farah-Saldivar.

11. Pursuant to lawful orders of the Milwaukee County Circuit Court, including a final Judgment of Divorce entered January 2, 2008, Trevor Richardson was awarded sole legal custody and primary physical placement of Andrew. Defendants were aware of these orders.

12. On January 2, 2008, in open court, the state was put on formal, legal notice of the specific and severe danger posed by the abductor. Andrew Richardson's court-appointed Guardian

ad Litem, Perry Friesler, testified that Ms. Farah-Saldivar suffered from severe, documented mental illness, including Borderline Personality Disorder and Manic Depression, and that she posed a significant and known flight risk to Mexico.

13. Throughout 2008, Trevor Richardson provided Defendants' offices with repeated, direct written warnings detailing the abductor's mental illness and high probability of fleeing to other countries to evade justice.

14. On April 8, 2009, the Milwaukee County District Attorney's Office charged Ms. Farah-Saldivar with two counts of felony interference with child custody. The State of Wisconsin subsequently issued an active Felony Warrant, No. J45120, for her arrest, designating her a wanted felony fugitive.

15. On January 8, 2009, Milwaukee County Circuit Court Judge Karen E. Christenson sent a letter directly to Defendant John Chisholm, putting him on direct, actual notice of the case's high-stakes, volatile, and international nature, and expressing concern over his office's handling of the matter.

B. Defendant Torbenson's Specialized Expertise in International Child Abduction

16. At all relevant times, Defendant Torbenson was not a generalist prosecutor; he was the Milwaukee County District Attorney's Office's designated subject matter expert on complex child victimization and international parental child abduction (IPCA).

17. In 2008, Defendant Chisholm established the specialized Child Protection & Advocacy Unit (CPAU) and hand-selected Defendant Torbenson as its inaugural team captain. He was later elevated to Deputy District Attorney with oversight of all sensitive crimes units.

18. Defendant Torbenson developed unparalleled expertise in resolving IPCA cases by leveraging federal tools. In 2011, he successfully negotiated the first-ever legal return of an abducted child from Japan, a nation then considered a "safe haven" for abductors, by using active felony warrants and NCIC leverage.

19. In 2015, the same year he directed the purge of Andrew's record, Defendant Torbenson successfully partnered with the U.S. Attorney's Office to negotiate the safe return of another child abducted to Mexico, demonstrating his mastery of the very federal coordination he would later sabotage in this case.

20. As a recognized regional authority and Adjunct Professor of Law at Marquette University, Defendant Torbenson knew with absolute certainty the critical role of the NCIC database as the central nervous system of domestic and international child recovery.

## C. The State-Created Danger: A Deliberate Violation of Federal Law and Protocol

21. Federal law, including Suzanne's Law (42 U.S.C. § 5779), mandates the immediate and indefinite entry of missing children into the NCIC database until they are physically located.

22. The FBI's NCIC Operating Manual, which governs all participating agencies including those of the City of Milwaukee, contains an explicit, non-discretionary protocol for international abductions: a missing child's record located in a foreign country "should not be removed from NCIC until the child is returned or until the issue of return has been resolved." Proper procedure requires retaining the record with a caveat noting the foreign location.

23. On or about June 24, 2015, Defendant Torbenson, acting under color of state law in an administrative and investigative capacity by advising police on database management, committed an affirmative, conscience-shocking act that directly violated these federal laws and protocols.

24. Defendant Torbenson advised and directed MPD Officer Benjamin Smith to administratively purge nine-year-old Andrew Richardson from the NCIC database as a missing person. This directive was executed via MPD Teletype #MWYA037.

25. The sole justification for this unlawful action was a Mexican civil court order that had been mailed directly to the MPD by the wanted felony fugitive, Ms. Farah-Saldivar.

26. Upon information and belief, the Mexican court order cited by Defendant Torbenson as justification for the NCIC purge was legally defective under the Hague Convention and Mexican law. On December 12, 2012, the Mexican Secretariat of Foreign Affairs (SRE), the federal authority responsible for international treaty compliance, issued an official opinion (Reference No. PME-115737.12) directly criticizing the Mexican family court's September 19, 2012 ruling. The SRE opinion explicitly stated that the Mexican court had misapplied Article 12 of the Hague Convention by invoking the 'integration into new environment' exception when the U.S. request was filed only fourteen (14) days after the abduction. Under the Hague Convention's Article 12 first paragraph—binding on both the United States and Mexico—when proceedings are initiated within one year of the wrongful removal, 'the authority...shall order the immediate return of the child.' The SRE opinion, citing binding Mexican Supreme Court jurisprudence, confirmed that the 'integration' exception only applies when proceedings commence AFTER one year has elapsed. Defendant Torbenson, as a recognized expert in international child abduction

who had successfully deployed Hague Convention mechanisms in his 2011 Japan and 2015 Mexico recoveries, knew or should have known that the foreign civil order he relied upon to dismantle federal protections was legally null and contrary to established Mexican and international law.

27. In a fatal contradiction demonstrating deliberate indifference, on the same date that Defendant Torbenson directed the removal of the child victim from the NCIC, he explicitly directed that the felony arrest warrant (No. J45120) for the abductor must remain active.

28. This dual action constituted a deliberate "smokescreen." By keeping the warrant active, Defendants created a facade of an ongoing criminal investigation while they secretly dismantled the primary federal and international safety mechanism designed to detect and recover the abducted child.

## D. The Catastrophic Systemic Consequences of the NCIC Purge

29. Defendant Torbenson's directive triggered a catastrophic cascade of systemic failures, transforming the global law enforcement safety net into an open door for Andrew's abductor. The NCIC purge: a. Caused a Prolonged Deprivation of Liberty: It enabled the fugitive abductor to maintain total control over the Plaintiff from June 2015 through 2023, a period covering Plaintiff's entire childhood from age nine through age seventeen. This constituted a state-facilitated deprivation of liberty and complete severing of familial association during Plaintiff's formative years. b. Paralyzed Foreign Law Enforcement: It prevented Mexican police from identifying Andrew as an abducted child during routine encounters, such as traffic stops. A query of his name would return "NO RECORD,"

depriving officers of the probable cause needed for a rescue. c. Collapsed the NCMEC Infrastructure: It triggered the automated removal of Andrew's missing child poster from the National Center for Missing & Exploited Children (NCMEC) website and all affiliated digital networks, erasing him from the public consciousness. d. Neutralized Civilian "Good Samaritan" Rescues: It legally prevented any civilian who might have recognized Andrew from an old poster from successfully turning him over to authorities, as police verification through NCIC would show he was not missing, forcing his release.

30. The specific, foreseeable, and direct result of Defendants' affirmative act was that the fugitive abductor would be able to transport Andrew across secure international borders without detection. Upon information and belief, the NCIC purge allowed Andrew to travel internationally, including an unimpeded trip to Germany in July 2024.

31. Defendants' unconstitutional actions were actively concealed from Plaintiff's father, Trevor Richardson, from June 24, 2015, until March 2026, when the fact of the NCIC purge was discovered through a Wisconsin Open Records request.

## IV. CAUSES OF ACTION

COUNT I: 42 U.S.C. § 1983 -- STATE-CREATED DANGER (Against Individual Defendants Torbenson, Chisholm, Smith, Ortiz, and Riley)

32. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

33. Defendants, acting under color of state law, committed an affirmative act by directing and executing the removal of Andrew Richardson from the NCIC database without his physical recovery, in direct violation of federal law and FBI operating protocols.

34. This act created and greatly increased a specific, foreseeable danger that Andrew would be trafficked across international borders without detection, a danger he would not have otherwise faced.

35. Defendants acted with deliberate indifference to this known and obvious danger. They were aware of the abductor's fugitive status, her documented mental instability, and the critical role of the NCIC, yet they dismantled that protection.

36. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff Andrew Richardson suffered a prolonged deprivation of his liberty and severe emotional and psychological trauma.

COUNT II: 42 U.S.C. § 1983 -- VIOLATION OF SUBSTANTIVE DUE PROCESS (DELIBERATE INDIFFERENCE) (Against Individual Defendants Torbenson, Chisholm, Smith, Ortiz, and Riley)

37. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

38. Defendant Torbenson, a national expert who knew from his own successful cases and, upon information and belief, from his own academic work that his actions would "fatally undermine" recovery efforts, directed the purge of Andrew's protections. This conduct, along with that of the other Defendants, was so egregious, arbitrary, and abusive of governmental power that it "shocks the conscience."

39. This conduct demonstrated a callous and reckless disregard for Andrew Richardson's fundamental rights to liberty, safety, and family association, protected by the Fourteenth Amendment.

40. As a direct and proximate result of this conscience-shocking conduct, Plaintiff Andrew Richardson suffered profound and lasting harm.

## COUNT III: 42 U.S.C. § 1983 -- MONELL LIABILITY FOR FAILURE TO SUPERVISE

(Against Defendant City of Milwaukee and Defendant John Chisholm)

41. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

42. Defendant John Chisholm, as a final policymaker for the Milwaukee County District Attorney's Office, had direct, actual notice from Judge Karen E. Christenson of the high-risk nature of this specific international abduction case.

43. Despite this warning, Defendant Chisholm failed to implement policies or exercise reasonable supervision to prevent his expert subordinate, Defendant Torbenson, from taking unconstitutional actions. This failure to supervise amounted to deliberate indifference to the constitutional rights of persons like Andrew.

44. The City of Milwaukee is liable for the customs and practices of the Milwaukee Police Department. The custom of deferring to the DA's office on NCIC management without independent verification of federal compliance, and the failure to train officers on the non-discretionary mandates of the NCIC Operating Manual for international cases, demonstrates deliberate indifference.

45. These failures to train and supervise were the moving force behind the violation of Andrew Richardson's constitutional rights, directly and proximately causing his injuries.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Andrew Richardson respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, awarding:

a. Compensatory damages for deprivation of liberty, emotional distress, pain and suffering, and other damages in an amount to be determined at trial; b. Punitive damages against the individual Defendants in an amount sufficient to punish their misconduct and deter future violations; c. Reasonable attorney's fees and costs of this action pursuant to 42 U.S.C. § 1988; and d. Any other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 6, 2026

Respectfully submitted,

ANDREW RICHARDSON,
5311 N. Bay Ridge Ave.
Milwaukee, WI 53217
1-207-504-7757
andr3w966@outlook.com
*Plaintiff, Pro Se*

LIST OF EXHIBITS

The following exhibits are attached to and incorporated by reference into this Complaint:

EXHIBIT A: Milwaukee Police Department Report No. 100300114, documenting the directive from ADA Torbenson and execution of Teletype #MWYA037 to purge Andrew Richardson from the NCIC.

EXHIBIT B: Letter from Milwaukee County Circuit Court Judge Karen E. Christenson to District Attorney John Chisholm, dated January 8, 2009, providing actual notice of the case's high-risk international nature.

EXHIBIT C: Transcript of January 2, 2008, court hearing with testimony from Guardian ad Litem Perry Friesler, detailing the abductor's mental illness and flight risk.

EXHIBIT D: Official letter from the Mexican Secretariat of Foreign Affairs (SRE), dated December 12, 2012 (Reference No. PME-115737.12), identifying that the Mexican family court's September 19, 2012 order denying Hague Convention return constituted a misapplication of Article 12 of the Hague Convention.