U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2026 JUL 10  A  9 10

CLERK OF COURT

ANDREW RICHARDSON,

      Plaintiff,

v.

CITY OF MILWAUKEE, et al.,

      Defendants

Case No. 26C0595

---

## FIRST AMENDED COMPLAINT (JURY DEMAND)

---

### PRELIMINARY STATEMENT

1. This is a civil rights action for damages and injunctive relief under 42 U.S.C. § 1983. Plaintiff Andrew Richardson, a victim of international child abduction, brings this action against state and municipal actors who, with deliberate indifference and in a manner that shocks the conscience, affirmatively dismantled his federal and international safety net. Instead of protecting a missing child, Defendants directed the issuance of a false official statement to a federal crime database, falsely declaring Plaintiff "FOUND BY MILWAUKEE POLICE DEPARTMENT" when they knew he was still missing in a foreign country in the custody of a wanted felon. This act of administrative sabotage, executed by an expert prosecutor and a police officer, created a state-created danger that caused a catastrophic, multi-year deprivation of Plaintiff's constitutional rights to liberty, familial association, and protection under the law.

1

2. Plaintiff files this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) as a matter of course within 21 days of the service of Defendants' motions to dismiss (Dkts. 16, 19). This First Amended Complaint supersedes the original complaint (Dkt. 1) in its entirety and moots all pending motions to dismiss as to the original pleading.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

6. Plaintiff **ANDREW RICHARDSON** is a citizen of the United States and a resident of Milwaukee, Wisconsin. From August 3, 2007, until his eighteenth birthday, he was the victim of an international parental child abduction, during which he was unlawfully retained in Mexico.

7. Defendant **CITY OF MILWAUKEE** is a municipal corporation organized under the laws of the State of Wisconsin. It is responsible for the policies, customs, and practices

2

of the Milwaukee Police Department (MPD) and for the training and supervision of its officers.

8. Defendant **BENJAMIN SMITH** is, upon information and belief, a law enforcement officer employed by the MPD. At all relevant times, he was acting under color of state law. He is sued in his individual capacity.

9. Defendant **JOHN CHISHOLM** is the District Attorney for Milwaukee County. At all relevant times, he was the final policymaker for the Milwaukee County District Attorney's Office and acted under color of state law. He is sued in his individual and supervisory capacity.

10. Defendant **MATTHEW TORBENSON** is a former Assistant District Attorney for Milwaukee County. At all relevant times, he was acting under color of state law. He is sued in his individual capacity.

11. Former defendants Robin Ortiz and Adam Riley have been voluntarily dismissed from this action.

## FACTUAL ALLEGATIONS

### A. The Abduction and Formal State Notice of Extreme Danger

12. On or about August 3, 2007, Plaintiff Andrew Richardson, then one year old, was abducted from Milwaukee, Wisconsin, and unlawfully retained in Mexico by his mother, Mariana Farah-Saldivar.

13. On January 2, 2008, the Milwaukee County Circuit Court held a formal evidentiary hearing regarding the abduction. At this hearing, the court-appointed Guardian ad Litem, Perry Friesler, testified under oath that Ms. Farah-Saldivar suffered from **borderline**

3

**personality disorder** and **manic depression**, diagnoses confirmed by clinical psychologist Dr. Wayne Harder. Mr. Friesler further testified under oath that he "don't believe there is any abuse here either mental or physical," and that Ms. Farah-Saldivar was "overly sensitive and any time a voice would get raised it was an allegation of abuse." *(See* **Exhibit G: Certified Transcript, January 2, 2008 Hearing**).

14. Based on this evidence, the Circuit Court found the abduction was a "**blatant, clear, intentional violation of the statutes**" and awarded Plaintiff's father, Trevor Richardson, sole legal custody and primary physical placement. *(Id.)*

15. On January 16, 2008, Trevor Richardson's attorney sent a letter to Assistant District Attorney Gary Mahkorn, formally placing the District Attorney's Office on notice of Ms. Farah-Saldivar's diagnosed mental illness, her extreme flight risk, and her ongoing violations of the Hague Convention on the Civil Aspects of International Child Abduction. *(See* **Exhibit J: Keith Wessel Letter to ADA Mahkorn**).

16. On August 26, 2008 - after a sixteen-month delay - ADA Mahkorn responded that it was "**improvident**" for his office to file felony charges against the abductor while foreign civil court proceedings were pending. *(See* **Exhibit I: ADA Gary Mahkorn Letter**).

17. On January 8, 2009, Milwaukee County Circuit Judge Karen E. Christenson sent a direct letter to Defendant **JOHN CHISHOLM**, warning him of the high-stakes, international nature of the case and demanding a charging decision from his office, noting that his office had been "reviewing possible charges for some time." This provided Defendant

Chisholm with actual, personal knowledge of the case's volatility and his office's inaction. *(See* **Exhibit H: Judge Christenson Letter to DA Chisholm**).

18. Defendant Chisholm possessed final policymaking authority over all charging decisions, inter-agency cooperation, and administrative protocols within the Milwaukee County District Attorney's Office. Despite receiving direct judicial notice in January 2009 of the extreme volatility of this international abduction case, and despite receiving additional notice through subordinates of the abductor's mental illness, flight risk, and Hague Convention violations, Defendant Chisholm maintained a custom of deliberate indifference by failing to:

    a. Institute any written policy or protocol requiring Hague-expert review before directing NCIC purges for internationally abducted children;

    b. Supervise, audit, or review Defendant Torbenson's administrative directives to the Milwaukee Police Department regarding NCIC database management;

    c. Respond to or investigate the systemic failures documented in the Milwaukee Police Department's own reports, including the failure to collect DNA, issue Missing Child Alerts, or notify child protective services; and

    d. Take any corrective action despite possessing actual knowledge that his office's sixteen-month delay in charging the abductor had squandered critical early recovery opportunities.

19. This conscious, six-year policy of inaction was the moving force that enabled Defendant Torbenson to unilaterally dismantle Plaintiff's federal protections in 2015. Under *J.K.J.*

*v. Polk County, Wisconsin*, 960 F.3d 367 (7th Cir. 2020) (en banc), a policymaker's "policy of inaction" in light of known constitutional risk is the functional equivalent of a decision to violate the Constitution.

**B. The Affirmative Act of Administrative Sabotage**

20. At all relevant times, Defendant Torbenson was not a generalist prosecutor. He was the Milwaukee County District Attorney's Office's designated subject-matter expert on international parental child abduction. In 2008, DA Chisholm established the specialized Child Protection & Advocacy Unit (CPAU) and hand-selected Torbenson as its inaugural team captain. Torbenson had successfully negotiated the first-ever legal return of an abducted child from Japan - a nation historically considered a safe haven for abductors - by leveraging active felony warrants and NCIC database pressure. In 2015, the same year he directed the purge of Andrew Richardson's record, Torbenson successfully partnered with the U.S. Attorney's Office to negotiate the safe return of another child abducted to Mexico. As an Adjunct Professor of Law at Marquette University, Torbenson possessed absolute, granular knowledge of the Hague Convention's Article 12 mandatory return provision and the FBI NCIC Operating Manual's prohibition on removing missing children's records located in foreign countries. As an expert in this field, Torbenson knew or should have known that the Mexican family court order was legally void and that federal law prohibited the NCIC purge.

21. On June 24, 2015, Defendant **TORBENSON**, acting in an administrative, non-prosecutorial capacity, directed MPD Officer **BENJAMIN SMITH** to purge nine-year-

6

old Andrew Richardson's record from the NCIC missing persons database. The official MPD report memorializes this directive: **"ADA Matthew Torbenson advised that Andrew Richardson should be taken out of NCIC as a missing person."** *(See* **Exhibit A: MPD Report 100300114, Supp. 0009, June 24, 2015**).

22. This directive violated federal law, including Suzanne's Law, 42 U.S.C. § 5779, and the FBI's NCIC Operating Manual, which mandate the indefinite entry of missing children and prohibit the removal of a record for a child located in a foreign country until the child is physically returned.

23. Simultaneously, Defendant **TORBENSON** directed that the active felony arrest warrant (No. J45120) for the abductor, Mariana Farah-Saldivar, **"should remain active."** *(Exhibit A)*. This created a deliberate **"smokescreen."**

24. On June 15, 2026, the Milwaukee County District Attorney's Office formally admitted in writing that **"MPD and Deputy District Attorney Matthew Torbenson determined it would be appropriate to remove the Missing Persons Alert from NCIC, but that the arrest warrant for Farah-Saldivar must remain in the system."** *(See* **Exhibit C: DA Rebuttal Letter**). This admission confirms Defendant Torbenson was a decision-maker in the purge and that the defendants consciously maintained the abductor's protections while eliminating the victim's.

25. The management, modification, and purge of a federal NCIC missing persons record is a purely administrative and investigative law enforcement function, not an act of prosecutorial advocacy. Under *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017),

7

absolute prosecutorial immunity does not shield prosecutors from liability for administrative and investigatory activities; and under *Maney v. Ratcliff*, 399 F. Supp. 760 (E.D. Wis. 1975), NCIC database management falls outside the scope of prosecutorial immunity.

26. On July 1, 2026, Chief of Police Jeffrey B. Norman disclosed that the Milwaukee Police Department is "**unable to locate**" any Mexican civil court order from Mariana Farah-Saldivar; that no metadata or terminal logs are retained for the teletype; and that "**[n]o emails, memoranda, notes, or phone records exist to or from Deputy District Attorney Matthew Torbenson concerning the NCIC status of Andrew Richardson in 2015.**" *(See* **Exhibit D: Chief Norman Disclosure Letter**). The absence of any documentary basis for the purge demonstrates Defendants acted without legal authority and in bad faith.

## C. The False Official Statement

27. Acting on Torbenson's directive, Defendant **SMITH** executed Teletype #MWYA037, which transmitted a **materially false official statement** to the NCIC and, by extension, to all connected federal, state, and international law enforcement agencies. The teletype falsely declared that Plaintiff Andrew Richardson was "**SUBJECT FOUND BY MILWAUKEE POLICE DEPARTMENT.**" *(See* **Exhibit E: Selected Final Disclosure Pages, pp. 40-41**).

28. This statement was false. Defendants knew Plaintiff had not been found, was not in MPD custody, and remained missing in Mexico with a wanted fugitive. This false

8

statement violated MPD Code of Conduct § 3.11, which prohibits making false official statements.

29. The false teletype was authorized by MPD Lieutenant Graham (ID #019118), constituting supervisory ratification of the unconstitutional act by the City of Milwaukee's chain of command. *(Id.)*

## D. The Legally Void Justification

30. The sole justification for this action was a September 2012 Mexican family court order that the fugitive abductor had mailed to the MPD.

31. This foreign order was a legal nullity. On December 12, 2012, the Mexican Secretariat of Foreign Affairs (SRE)-Mexico's federal authority for treaty compliance-issued Opinion PME-115737.12, which confirmed that the local Mexican court had **erroneously applied Article 12 of the Hague Convention.** *(See* **Exhibit F: SRE Opinion**).

32. The SRE found that because the U.S. return request was filed a mere **fourteen days** after the abduction, the first paragraph of Article 12 was triggered, which commands that the judicial authority **"shall order the immediate return of the child."** The local court's reliance on the "integration into new environment" exception was categorically inapplicable. *(Id.)*

33. As an expert on the Hague Convention, Defendant **TORBENSON** knew, or recklessly disregarded the obvious fact, that he was relying on a void foreign civil order to justify the sabotage of a mandatory federal criminal database.

## E. The Foreseeable Catastrophe and Pattern of Deliberate Indifference

9

34. The false NCIC purge caused a prolonged, multi-year deprivation of Plaintiff's liberty. It systematically paralyzed all domestic and international recovery efforts. NCMEC emails from January 2015 confirm Plaintiff's case was still active and linked to the NCIC record that Defendants purged five months later. *(See* **Exhibit E: Selected Final Disclosure Pages, pp. 42-44**).

35. This act was the culmination of an eight-year pattern of deliberate indifference by the MPD, documented in its own reports. The MPD repeatedly violated its own written policies, including:

   a. **SOP 180.90 (Long-Term Missing Persons):** Failed to collect mandatory DNA, dental records, or fingerprints.

   b. **SOP 180.55 (Missing Child Alerts):** Failed to issue an Amber Alert or Missing Child Alert.

   c. **SOP 180.25(C) (Active Follow-Up):** Conducted only a passive, phone-call-based investigation, ignoring intelligence from ICE and other federal partners.

   d. **Wis. Stat. § 48.981:** Failed to notify the Wisconsin Department of Children and Families (DCF). *(See* **Exhibit B: MPD Report 072210128, Supp. 0018**).

**COUNT I Substantive Due Process - State-Created Danger (42 U.S.C. § 1983 - Against All Defendants)**

36. Plaintiff realleges and incorporates the preceding paragraphs.

37. By directing and executing the false purge of Plaintiff's NCIC missing person record, Defendants affirmatively created and increased the danger that Plaintiff would suffer a

10

prolonged deprivation of his liberty. They transformed a global law enforcement safety net into an open door for his abductor.

38. This affirmative act, particularly the false statement that Plaintiff was "FOUND," is not an omission or failure to protect under *DeShaney v. Winnebago County*, 489 U.S. 189 (1989). It is an act of administrative sabotage analogous to the affirmative acts of endangerment found unconstitutional in *Rakes v. Roederer*, 117 F.4th 968 (7th Cir. 2024), and *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998).

39. Defendants' conduct demonstrates deliberate indifference and shocks the conscience. They knew Plaintiff was a missing child in the custody of a wanted felon, yet they took proactive steps to erase his protections while creating a "smokescreen" to conceal their actions.

40. Defendants' actions were the proximate cause of the prolonged, multi-year deprivation of Plaintiff's liberty and his right to familial association from age nine through seventeen.

41. Because Defendants' administrative sabotage of the NCIC database was an affirmative act that created a danger Plaintiff would not otherwise have faced, Defendants are not entitled to qualified immunity, and their conduct states a claim for state-created danger under the Fourteenth Amendment.

**COUNT II Substantive Due Process - Abuse of Governmental Power (42 U.S.C. § 1983 -Against All Defendants)**

42. Plaintiff realleges and incorporates the preceding paragraphs.

11

43. The executive action of knowingly making a false official statement to a federal crime database for the purpose of administratively closing a missing child case shocks the conscience.

44. This action served no legitimate governmental purpose. Instead, it was an arbitrary and oppressive abuse of power that directly harmed a vulnerable child for the sake of bureaucratic convenience.

45. This conduct, particularly the creation of the "smokescreen," demonstrates malice or, at a minimum, a reckless disregard for Plaintiff's life and liberty, in violation of his rights under the Fourteenth Amendment.

46. Because Defendants knowingly made a false official statement to a federal crime database for no legitimate law enforcement purpose, their conduct shocks the conscience and states a claim for substantive due process violation under the Fourteenth Amendment.

**COUNT III Equal Protection – "Class of One" (42 U.S.C. § 1983 - Against All Defendants)**

47. Plaintiff realleges and incorporates the preceding paragraphs.

48. Plaintiff was intentionally treated differently from other similarly situated abducted children located in foreign jurisdictions, whose NCIC records MPD retains indefinitely pursuant to federal mandates, including Suzanne's Law, 42 U.S.C. § 5779, and the FBI NCIC Operating Manual.

49. There was no rational basis for this differential treatment. The decision to purge Plaintiff's record based on a void foreign civil order-while simultaneously maintaining

12

the active felony warrant for his abductor-was irrational, arbitrary, and wholly unrelated to any legitimate law enforcement objective.

50. This irrational and arbitrary treatment violated Plaintiff's right to equal protection of the laws under the Fourteenth Amendment, as articulated in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

51. Because Defendants intentionally treated Plaintiff differently from other similarly situated abducted children without any rational basis, their conduct states a claim for violation of the Equal Protection Clause under the Fourteenth Amendment.

**COUNT IV *Monell* Liability (42 U.S.C. § 1983 - Against Defendant City of Milwaukee)**

52. Plaintiff realleges and incorporates the preceding paragraphs.

53. The City of Milwaukee maintained policies and customs that were the moving force behind the violation of Plaintiff's constitutional rights. These customs include a failure to train, supervise, and discipline its officers on the non-discretionary mandates of federal law and its own policies for missing children.

54. This failure to train amounted to deliberate indifference, as evidenced by the documented, eight-year pattern of policy violations in Plaintiff's own case, including the failure to collect DNA, issue alerts, notify DCF, and the ultimate issuance of a false official statement approved by a supervisor, Lt. Graham.

55. Furthermore, the decision by Defendant Torbenson, a county actor vested with apparent authority to direct MPD personnel on NCIC matters, and the ratification of that unconstitutional directive by MPD supervisors, constitutes a municipal policy for which

13

the City of Milwaukee is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and *City of Canton v. Harris*, 489 U.S. 378 (1989).

56. Because the City of Milwaukee's failure to train its officers on mandatory NCIC compliance, and its ratification of the unconstitutional purge through supervisory approval, constituted a municipal policy or custom that was the moving force behind the constitutional violation, Plaintiff states a claim for municipal liability under Monell.

## PRAYER FOR RELIEF

57. WHEREFORE, Plaintiff Andrew Richardson respectfully requests that this Court enter judgment in his favor and against Defendants, granting the following relief:

58. A declaration that Defendants' actions violated Plaintiff's rights under the Fourteenth Amendment;

59. Compensatory damages in an amount to be determined at trial;

60. Punitive damages against the individual Defendants in an amount to be determined at trial;

61. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

62. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

63. Plaintiff demands a trial by jury on all issues so triable.

Dated: July 10, 2026

Respectfully submitted,

14